IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:05-CV-00492

| | |
|---|---|
| WILLIAM HARDIN, JR., )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>BELMONT TEXTILE MACHINERY, )<br>COMPANY, WALTER RHYNE, )<br>individually and in his official capacity as a )<br>corporate officer, and JEFFREY RHYNE, )<br>individually, and in his official capacity as )<br>corporate President, )<br>)<br>**Defendants.** )<br>_____) | **ORDER** |

**THIS MATTER** comes before the Court on Defendants' Motion to Dismiss Plaintiff's claims for wrongful discharge based on public policy expressed in the NC Whistleblower Act and NC Equal Employment Practices Act ("EEPA"), breach of an implied covenant of good faith and fair dealing, violation of Plaintiff's state constitutional rights, and violation of Title VII of the Civil Rights Act of 1964. After reviewing the record and the filings in this case, the Court is now prepared to rule. Belmont Textile's Motion to Dismiss is **GRANTED** in part and **DENIED** in part..

Defendant's Motion for Sanctions is also before the Court. In the Court's view, sanctions would be inappropriate at this point. Therefore, this motion is hereby **DENIED**.

## BACKGROUND

In June 2005, the Plaintiff, William C. Hardin, Jr. ("Hardin"), was terminated by the defendant, Belmont Textile Machinery Company ("Belmont"), after working for it from May 1997

1

to June 27, 2005. Defendant Walter Rhyne, the Chief Executive Officer of Belmont, and Defendant Jeffrey Rhyne, the President of Belmont, terminated Hardin because they alleged that he was spending too much time moonlighting for another company during working hours. At the time of his termination, Hardin was 61, had undergone bypass surgery, and had planned to have knee surgery. Hardin alleges that he was fired because of his age, disability, health, opposition to Belmont's unlawful activities, insistence on proper reporting, and demands for the payment of past wages due to employees.

Hardin further alleges that, during his employment, he voluntarily accepted salary reductions that were kept "off the books." He alleges that Defendants promised to repay these salary reductions as well as a large bonus when the company returned to profitability, but did not, even after Hardin told them that he and the other employees should be repaid. Also, Hardin alleges that he objected to Belmont's improper reporting to the IRS regarding company vehicles and Defendants' discussion about how to force workers off health insurance, which was becoming more expensive for the company. Based on these incidents, Hardin has brought eight causes of action before this Court, five of which are being challenged by Belmont on a Motion to Dismiss.

**DISCUSSION**

Defendants seek to dismiss five of the eight causes of action brought by Hardin against them, including: 1) wrongful discharge supported by the public policy of the NC Whistleblower Act and the EEPA, 2) breach of an implied covenant of good faith and fair dealing, 3) violation of his free speech rights arising from the State Constitution, 4) violation of state constitutional rights "under the Law of the Land," and 5) a claim against Defendants in their individual capacities for violating Title VII and EEPA. In addition, Defendants argue that sanctions should be imposed because these

2

claims are not supported by applicable law.

**A. Standard of Review**

"A motion to dismiss under [Fed. R. Civ. P. 12(b)(6)] tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1993) *citing* 5A C. Wright & A. Miller, Fed. Practice and Procedure § 1356 (1990). "A motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of [the subject] claim." McNair v. Lend Lease Trucks, Inc., 95 F.3d 325, 328 (4th Cir. 1996) (*en banc*) (citations omitted). In considering a Rule 12(b)(6) motion, the complaint must be construed in the light most favorable to the nonmoving party, assuming factual allegations to be true. See, e.g., Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir. 1989). "A complaint should not be dismissed for failure to state a claim . . . unless after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002).

**B. Wrongful Discharge**

    i. NC Whistleblower Act

Even though state statutes that regulate state employees do not create a claim for wrongful discharge in bad-faith of a private at-will employee, Amos v. Oakdale Knitting Co., 416 S.E.2d 166, 173 (N.C. 1992); Salt v. Applied Analytical, Inc., 412 S.E.2d 97, 103 (N.C. Ct. App. 1991), an at-

3

will employee has a claim for retaliatory discharge if the discharge violates well-established public policy. Coman v. Thomas Mfg. Co., 381 S.E.2d 445, 447 (N.C. 1989); English v. G.E. Inc., 765 F. Supp 293, 296 (E.D.N.C. 1991). Coman created a public policy exception to the employment at-will doctrine, but did not create a claim for wrongful discharge in bad faith. Coman, 381 S.E.2d at 448. Wrongful discharge claims based on public policy violations have been successful only when the plaintiff was forced to break the law or be fired. Harrison v. Edison Bros. Apparel Stores, Inc., 924 F.2d 530, 533 (4th Cir. 1991); Haburjak v. Prudential Bache Sec., Inc., 759 F. Supp. 293, 300 (W.D.N.C. 1991). In Haburjak, the plaintiff, a stock broker, claimed that he was fired in retaliation for widespread insider trading at his office which he had discovered and was required to report. 759 F. Supp. at 294-5. Even though brokers are required by law to report insider trading, the court refused to extend the exception to the at-will employee doctrine to include cases where an employee is fired for performing an act required by law. Id. at 300-1.

Under the North Carolina Whistleblower Act, a state employee or agency cannot take retaliatory action against a state employee for reporting unlawful activity or refusing to carry out unlawful activity.[1] N.C. Gen. Stat. § 126-85. It has been found that a state statute that regulates only state employees does not "serve as a declaration of public policy by and for the entire State." Buser v. S. Food Serv., Inc., 73 F.Supp.2d 556, 566 (M.D.N.C. 1999).

Here, the Whistleblower Act is state public policy for state agencies and employees rather than private employees and was not intended to serve as state public policy. The plain language of

---

[1]. The Whistleblower Act does not create a private cause of action. See Hodge v. N.C. Dept. of Transp., 622 S.E.2d 702, 706-7 (N.C. Ct. App. 2005) (summarizing relevant cases that apply only to state actors). Here, the plaintiff is making a claim for a common law tort action based on public policy, not a private right of action based on the Whistleblower Statute.

§ 126 addresses only state employees and agencies, and nothing in the Whistleblower Act indicates that it was intended to serve as public policy for the public at large. Buser, 73 F. Supp.2d at 566.

Moreover, courts have allowed a plaintiff to pursue a wrongful discharge claim under the at-will employee doctrine only when the employee must either break the law himself or lose his job. Harrison, 924 F.2d at 533. Here, Hardin objected in the face of alleged unlawful activity, but was not forced to perform unlawful activities to keep his job. As in Haburjak, in which the court rejected the wrongful discharge claim of a stock broker who had discovered insider trading which he was required by law to report, Hardin's knowledge of alleged illegal activity at his company is not sufficient to support a claim for wrongful discharge. Haburjak, 759 F. Supp. at 300-1. Even though the state has an interest in encouraging honest activity in the private sector and not allowing private employers to retaliate against employees who refuse to perform unlawful activity, it is for the state legislature and state courts, not this Court, to determine the extent of a cause of action based on public policy considerations, and this Court will not recognize a new cause of action where none has previously existed. Thus, the Plaintiff's third cause of action for wrongful discharge is dismissed insofar as it is based on the NC Whistleblower Act.

### ii. NC Equal Employment Practices Act

State public policy, under the NC Equal Employment Practices Act, protects all persons from discrimination in the workplace based on race, religion, color, national origin, age, sex, or handicap. N.C. Gen. Stat. § 143-422.2.

In contrast to the NC Whistleblower Act, the public policy of § 143-422.2 provides a basis

for a common law wrongful discharge claim under North Carolina law.[2] Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995). In Hughes, even though the court ultimately found the plaintiff's evidence to be deficient, the court explicitly recognized a wrongful discharge claim based on sex discrimination in violation of the public policy of § 143-422.2. Id. at 1383-4. The court stated that, "In this case, Hughes has an adequate state remedy in her action for wrongful discharge in violation of the public policy in N.C. Gen. Stat. § 143-422.2." Id. at 1383.

Here, the Plaintiff may proceed on a common law claim for wrongful discharge based on a violation of the public policy of the EEPA. Hughes recognized common law discharge claims based on discrimination, including sex, age, and handicap discrimination, in the workplace. Consequently, just as the plaintiff in Hughes had an adequate state remedy for sex discrimination based on § 143-422.2, Hardin also has a adequate remedy for discrimination for age and handicap based on the same statute. Therefore, the Plaintiff's third cause of action for wrongful discharge against the corporate Defendant is not dismissed insofar as it is based on the public policy set forth in § 143-422.2 of the EEPA.

It is not clear whether the claim for wrongful discharge is being asserted against the Defendants in their individual capacities. The court will assume that the Plaintiff is asserting a claim for wrongful discharge against the Defendants in their individual capacities. § 143-422.2 states that it is state public policy to protect employees from discrimination "by employers which regularly employee 15 or more employees." Accordingly, § 143-422.2 applies only to employers and does not

---

[2] A private cause of action under § 143-422.2 has not been recognized by North Carolina courts. Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000). The plaintiff, however, is making a claim for a common law tort action based on public policy, not a private right of action based on the EEPA.

apply to Defendants Walter Rhyne and Jeffrey Rhyne as individual officers. Thus, the Plaintiff's third cause of action for wrongful discharge against the Defendants in their individual capacities is dismissed insofar as it is based on the public policy set forth in § 143-422.2 of the EEPA.

**C. Implied Covenant of Good Faith and Fair Dealing**

An employee will be considered "at-will" if a written or oral contract does not specify the duration of the employment, and in that case, either party can terminate the employment at will. Rosby v. Gen. Baptist State Convention of N.C. Inc., 370 S.E.2d 605, 607 (N.C. Ct. App. 1988). The employee has the burden to specify the duration of the employment contract. Id. at 608. North Carolina law does not recognize a claim for wrongful discharge of an at-will employee based on an implied covenant of good faith and fair dealing. See Salt, 412 S.E.2d at 102 (affirming Superior Court's grant of summary judgment against plaintiff due to insufficient evidence).

The hope of the employer or employee that an employment contract last for a substantial term does not show that the parties agreed on a fixed duration of employment. Roberts v. Wake Forest Univ., 286 S.E.2d 120, 123 (N.C. Ct. App. 1982). In Roberts, the plaintiff believed that he would be employed for at least six years as a university golf coach because by custom golf coaches have long periods of employment. Id. Also, in an interview, the university president said that he hoped that the plaintiff would achieve his goal of 13 national championships. Id. at 122. The court found that this evidence demonstrated the desire of the parties that the plaintiff do his job well, but not their intention to fix a specific term of employment. Id. at 123.

Here, Hardin does not have a claim for a breach of an implied covenant of good faith and fair dealing because he had no written employment contract. With no written contract, Hardin, as an at-will employee, does not have a claim for breach of an implied covenant of good faith and fair

dealing. Salt, 412 S.E.2d at 102.

Even if Hardin can show that he had made an oral agreement with Belmont about his employment, he would still be an at-will employee because he has failed to show the agreed on duration of his employment. The burden is on Hardin to show the duration of his employment. Rosby, 370 S.E.2d at 608. Assuming all the allegations are true, Hardin's complaint does not even allege that there is a contract indicating the terms and duration of his employment. Rhyne's promise that Hardin would be repaid when the company returned to profitability did not imply a specific duration because the company could have become profitable anytime. Like the golf coach in Roberts, whose hope to be employed for a substantial period of time did not change his status as an at-will employee, Hardin's hope that he be employed when the company returned to profitability did not show a specific duration. Roberts, 286 S.E.2d at 123. Therefore, Hardin was an at-will employee that could be discharged at any time. Accordingly, his claim for breach of an implied covenant of good faith and fair dealing is dismissed.

### D. State Constitutional Claims

The declaration of rights contained in the North Carolina Constitution were meant "chiefly to protect the individual from the State." State v. Ballance, 51 S.E.2d 731, 734 (N.C. 1949). The State Constitution does not provide a remedy for individuals against companies in private disputes over property. Teleflex Info. Sys., Inc. v. Arnold, 513 S.E.2d 85, 88 (N.C. Ct. App. 1999). Also, it is well recognized that free speech abridgment claims against private sector employers have been rejected in North Carolina. See e.g., Corum v. Univ. of N.C., 413 S.E.2d 276, 289 (N.C. 1992).

Here, the Plaintiff's fifth and sixth causes of action based on the North Carolina Constitution fail because these claims have not been recognized. The individual rights of the state constitution

do not provide a remedy for private sector employees against their employers. Furthermore, Plaintiff does not even dispute that these claims should be dismissed. Thus, the fifth and sixth causes of action are dismissed.

**E. Individual Liability Under Title VII**

There is no individual liability for supervisors for Title VII violations. Lissau v. S. Food Serv., Inc., 159 F.3d 177, 180 (4th Cir. 1998). According to Title VII, an employer is any person who employs fifteen or more employees, and "any agent of such a person." Id. Congress included "agent" to impose liability not on supervisors individually, but on the employer for discriminatory acts by the agent as a form of respondeat superior. Id. Furthermore, Title VII does not apply individually to an employee supervising five people in a large company, just as it does not apply to a five-person company. Id. In this case, Defendants Walter Rhyne, Chief Executive Officer of Belmont, and Jeffrey Rhyne, President of Belmont, were officers of Belmont and as officers of the company were not employers. Thus, they are not liable in their individual capacities for Title VII violations. Moreover, Plaintiff does not even dispute the dismissal of this claim. Accordingly, Plaintiff's seventh cause of action is dismissed insofar as it exerts a claim against Jeffrey and Walter Rhyne in their individual capacities.

**F. Sanctions**

The court may impose sanctions for claims or defenses that are not warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law. Fed. R. Civ. P. 11(c). It is at the court's discretion whether to impose sanctions. Ost-West-Handel Bruno Bichoff GmbH v. Project Asia Line, Inc., 160 F.3d 170, 177 (4th Cir. 1998). Here, it appears to the Court in its discretion that sanctions would not be warranted.

**IT IS THEREFORE ORDERED** that Defendant Belmont Textile's Motion to Dismiss is **GRANTED** as it pertains against Defendants Walter Rhyne and Jeffrey Rhyne in their individual capacities and against the corporate Defendant for wrongful discharge based on the NC Whistleblower Act, breach of an implied covenant of good faith and fair dealing, and violations of his rights under the State Constitution. The Motion to Dismiss is **DENIED** as it pertains against the corporate Defendant for wrongful discharge based on the public policy set forth in the EEPA.

In addition, Defendant's Motion for Sanctions is **DISMISSED.**

Signed: August 3, 2006

Graham C. Mullen
United States District Judge