IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:05CV492-MU

| | |
|---|---|
| William C. Hardin, Jr., ) | |
| ) | |
| Plaintiff. ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Belmont Textile Machinery Company, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**THIS MATTER** is before the Court upon Plaintiff's Motion for Protective Order, to Quash Subpoena and for Sanctions (Document 31) and Defendant's Motion to Enforce Subpoena (Document 34). For the reasons set forth below, Plaintiff's motion is DENIED in part and GRANTED in part, and Defendant's Motion is GRANTED.

**I. Background**

On October 25, 2005 William Hardin ("Mr. Hardin") filed suit in Gaston County Superior Court against his former employer, Defendant Belmont Textile Machinery ("Belmont"). Belmont is a United States corporation, with its principal place of business in Gastonia, North Carolina. Mr. Hardin was employed by Belmont since May 1997, first as an engineering and project manager and later Vice President. Following his termination in June 2005, Mr. Hardin brought suit against Belmont, asserting claims of fraud, violation of the North Carolina Wage and Hour Act, wrongful discharge, and breach of employment contract. The case was removed to federal court on November 28, 2005 pursuant to Belmont's motion. Belmont raised a counterclaim, asserting a state law claim of conversion. Belmont contends that Mr. Hardin was

"conducting work for a side-business called DentaCAD during work hours" at Belmont, and therefore, terminated. Defendant's Mem. at 2.

On January 6, 2006, this Court set a Pretrial Order and Case Management Plan, requiring all discovery to be completed by October 2, 2006. This Court directed counsel "to initiate discovery requests and notice or subpoena depositions sufficiently in advance of the discovery completion deadline so as to comply with this Order. Discovery requests that seek responses or schedule depositions after the discovery completion deadline are not enforceable except by order of the court for good cause shown." Subsequently, three discovery extensions have been granted by this Court: the first extended discovery until January 2, 2007, the second until March 2, 2007 and the third until April 18, 2007.

In response to Belmont's conversion claim, Mr. Hardin argues that his work and home computers are mirror images, and therefore, any DentaCAD material on his work computer does not prove that he did DentaCAD business while working at Belmont. In response to written discovery and depositions, Mr. Hardin indicated that he had one home computer, and in his initial disclosures, Mr. Hardin stated that there was a DVD copy of the home computer. Belmont received a copy of the DVD at Mr. Hardin's deposition on December 18, 2006. During this deposition, Mr. Hardin indicated that his wife, Patricia, had done much of the DentaCAD work on the home computer. Mr. Hardin's second deposition, on March 8, 2007, concerned the contents of the DVD. Based on this deposition, Belmont contends that Mr. Hardin's work and home computers are not mirror images.

On March 9, 2007, Mrs. Hardin was deposed. Contrary to her husband's statements, Mrs. Hardin testified that there were eight home computers used for DentaCAD business during Mr.

2

Hardin's Belmont employment. On March 20, 2007 Belmont faxed Mr. Hardin's attorneys a letter requesting the right to inspect:

> (1) Bill Hardin's 420 Dell desktop identified in . . . Defendant's First Set of Discovery Requests.
>
> (2) 8 computers previously used for DentaCAD work as testified to by Pat Hardin.
>
> (3) Pat Hardin's 'old' Dell laptop that she used for DentaCAD work which she testified she had recently replaced.
>
> (4) Pat Hardin's new Dell laptop that she uses for DentaCAD work.
>
> Plaintiff's Mem. Ex. 1.

Belmont claims that Mr. Hardin engaged in "gamesmanship" subsequent to the March 9 letter in an effort to stall until the close of discovery. Defendant's Mem. at 9. On April 3, 2007, Belmont issued a subpoena to Mr. Hardin's counsel "for the inspection of various computers owned by Bill Hardin which were the subject of [the] letter of March 20, 2007." Plaintiff's Mem. Ex. 1. The production and inspection of these materials was to be conducted by April 12, 2007. Mr. Hardin filed the present motion to quash to the subpoena, to request a protective order for the computers, and to institute sanctions on April 11, 2007.

## II. Discussion

Mr. Hardin claims that the April 3, 2007 subpoena fails to comply with Federal Rules of Civil Procedure, because it is addressed to a party, delivered "after the time allowed for service of discovery requests and does not afford a reasonable or proper time to respond, was delivered to counsel for plaintiff, but not served directly on said party and seeks the property of a person other than the party identified in the subpoena." Plaintiff's Mem. at 4-5.

This Court finds that the subpoena is not in violation of the Federal Rules of Civil

Procedure. First, although the subpoena was addressed to Mr. Hardin, a party to the action, this district allows for a Rule 45 subpoena to be served on both parties and non-parties, provided that a Rule 45 subpoena is not used to "circumvent" the Rule 34 requirements. See Mortgage Information Services, Inc. v. Kitchens, 210 F.R.D. 562, 566 (W.D.N.C. 2002); McLean v. Prudential S. S. Co., 36 F.R.D. 421, 425 (E.D.Va. 1965) ("[i]t is unthinkable that the effect of Rule 34 can be emasculated by the use of Rule 45"). Thus, the standard is whether Belmont's subpoena seeks to access documents in a manner to circumvent discovery. This Court, as addressed below, finds that the subpoena does not violate the requirements of Rule 34, and therefore, is not a device to undermine the rules of discovery.

In North Carolina, subpoenas constitute discovery, and must be filed before the close of the discovery period. Kitchens, 210 F.R.D. at 566. Unlike the cases cited by Mr. Hardin where a subpoena was filed after the discovery deadline, Belmont's service of the subpoena fell within the discovery time line. Discovery closed on April 18, 2007, and Belmont issued its subpoena on April 3, 2007. Further, although this Court directed counsel to "initiate discovery requests and notice or subpoena depositions sufficiently in advance of the discovery completion deadline so as to comply with this Order," this Court finds no 30 day requirement as Mr. Hardin contends. Therefore, the subpoena was timely filed.

Mr. Hardin also argues that the subpoena is improper because it seeks information previously referenced in written discovery. As noted in Joiner v. Choicepoint Services, Inc., if the subpoenaed materials "encompass documents . . . originally asked for" in the document production request, then the proper device for seeking such documents is a motion to compel, rather than a subpoena. 2006 WL 2716090 at *5 (W.D.N.C. Sept. 15, 2006).

The subpoena at issue here does not seek materials previously disclosed. First, it is clear that Belmont did not originally request access to the additional home computers identified by Mrs. Hardin, because Belmont was not aware of these computers until March 9, 2007, the date of her deposition. Accordingly, since Belmont did not seek written discovery of these computers, it could not have issued a motion to compel. Second, although Belmont did request access to Mr. Hardin's 420 Dell desktop in the original document production request, Belmont argues that it believed the DVD was an exact replica of that computer until March 8, 2007, when Mr. Hardin was deposed about the DVD. In this second deposition did Belmont learn that the DVD contained only "key" files, rather than all files on his home computer. Defendant's Mem. at 5. Prior to March 8, 2007, Belmont was not aware of the need to access Mr. Hardin's computer in addition to the DVD.

Having thus concluded that the subpoena does not attempt to circumvent discovery, this Court now addresses other alleged procedural defects. First, Mr. Hardin claims that the subpoena improperly seeks materials not under Mr. Hardin's control. However, a party may be served with a request to produce documents or electronically stored information "in the possession, custody or control of the party upon whom the request is served." Fed. R. Civ. P. 34. Moreover, courts construe "control" broadly. See Uniden America Corp. v. Ericsson Inc., 181 F.R.D. 302, 305 (M.D.N.C. 1998) (establishing control by legal authority or actual ability); SEC v. Credit Bancorp, Ltd., 194 F.R.D. 469, 471 (S.D.N.Y. 2000) (defining control as "the legal right, authority, or practical ability to obtain the materials sought on demand"). Mr. Hardin exercises such control of the computers in question. The computers are located in a home owned by Mr. and Mrs. Hardin, and used for work benefitting corporations owned and operated by Mr. and

Mrs. Hardin. Defendant's Mem. at 7. Thus, the computers are under Mr. Hardin's control.

Second, Mr. Hardin claims that the subpoena was improperly served on his counsel. This Court disagrees. Federal Rule of Civil Procedure 5(b) states that if a party is represented then service is "made on the attorney unless the court orders service on the party." Therefore, service of the subpoena upon Mr. Hardin's counsel was appropriate.

Third, Mr. Hardin claims that the subpoena must have been served with notice of a deposition. Federal Rule of Civil Procedure 45(a)(1), however, states: "A command to produce evidence or to permit inspection . . . may be joined with a command to appear at trial or hearing or at deposition, or may be issued separately." Thus, no notice of deposition was required.

Fourth, Mr. Hardin alleges that the information sought is irrelevant to Belmont's claim of conversion; this Court, however, finds the subpoenaed materials to be relevant. Belmont maintains that Mr. Hardin performed DentaCAD business while employed by Belmont using both his home and work computers. The examination of this claim clearly calls for an inspection of the computers in question. Further, since the DVD does not include all the files on the 420 Dell, and the computers identified by Mrs. Hardin have not been examined at all, an alternate way of accessing this information is not apparent. Accordingly, this Court finds the computers to fit within the parameters of discovery. See Fed. R. Civ. P. 26 (b) ("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party"). As discussed below, this Court does not find the material to be privileged.

Finally, Mr. Hardin contends that even if the subpoena was properly filed, this Court should quash the subpoena. In order to prevail on a motion to quash a subpoena, a party must show that the subpoena fails to allow reasonable time for compliance, requests privileged or

other protected matter absent an exception or waiver, or subjects a person to undue burden. Fed. R. Civ. P. 45(c)(3)(a)(i, iii, iv). The party seeking to quash "bears a heavy burden to show 'compliance with the subpoena would be unreasonable and oppressive.'" Joiner at *4. For the reasons set forth below, this Court does not find cause to quash Belmont's subpoena.

The subpoena was served on April 3, 2007 and requested production of the computers by April 12, 2007 at 12:00pm. Mr. Hardin's assertion that a production deadline of less than 10 days is unreasonable lacks any citation. The "reasonableness" of the response time is determined by the court, which considers "the extent of the information requested and other underlying circumstances." 9A Fed. Prac. & Proc. Civ.2d § 2463 at 71. Here, the subpoena requested eleven total computers. Moreover, the underlying circumstances, particularly the different testimony from Mr. and Mrs. Hardin's regarding the number of home computers, as well as claims of gamesmanship in an effort to stall the production of the materials, suggest that any brevity in the response time was a product of Mr. Hardin's actions, not Belmont's. Therefore, this Court finds the time for compliance to be reasonable.

This Court further finds that the materials are not privileged. Mr. Hardin claims that the computers contain "family data." To the extent that such personal information, wholly divorced from any DentaCAD or Belmont work, is contained on the computers in question, this Court issues a protective order for the Hardin's personal, non-business information.

Finally, this Court finds that the subpoena subjects neither Mr. or Mrs. Hardin to an undue burden. Belmont's computer analyst could perform the inspection "in a day or two and return them to the Hardins immediately upon completion of the inspection." Defendant's Mem. at 8. Such an inspection does not rise to the level of an undue burden. Therefore, this Court

7

finds that Mr. Hardin fails to demonstrate that the subpoena should be quashed.

In conclusion, it is therefore ordered that Mr. Hardin's Motion for Protective Order, to Quash Subpoena and for Sanctions is hereby DENIED in part and GRANTED only as it pertains to the Hardins' personal, non-business information stored on the computers in question. It is further ordered that Belmont's Motion to Enforce Subpoena is hereby GRANTED.

IT IS SO ORDERED.

Signed: August 7, 2007

Graham C. Mullen
United States District Judge