# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:05-CV-00492

| | |
|---|---|
| WILLIAM HARDIN, JR., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BELMONT TEXTILE MACHINERY, ) <br> COMPANY, WALTER RHYNE, ) <br> individually and in his official capacity as a ) <br> corporate officer, and JEFFREY RHYNE, ) <br> individually, and in his official capacity as ) <br> corporate President, ) <br> ) <br> Defendants. ) <br> _____ ) | ORDER |

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment on Plaintiff's claims for fraud, violation of the North Carolina Wage and Hour Act, wrongful discharge based on public policy expressed in the NC Equal Employment Practices Act ("EEPA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), Age Discrimination in Employment Act ("ADEA"), and the Americans with Disabilities Act of 1990 ("ADA"). (Document #38). Defendants also move for summary judgment on their counterclaim for conversion. After reviewing the record and the filings in this case, Belmont Textile's Motion for Summary Judgment is **GRANTED**.

## BACKGROUND

From May 1997 to June 27, 2005. Plaintiff William C. Hardin ("Hardin") was employed

by Belmont Textile Machinery Company ("Belmont"). In June 2005, Hardin was terminated from his position. Defendant Walter Rhyne, the Chief Executive Officer of Belmont, and Defendant Jeffrey Rhyne, the President of Belmont, terminated Mr. Hardin alleging that he was spending too much time moonlighting for another company during working hours. At the time of his termination, Mr. Hardin was 61, had undergone bypass surgery, and planned to have knee surgery. Mr. Hardin alleges that he was fired because of his age, disability, health, opposition to Belmont's unlawful activities, insistence on proper reporting, and demands for the payment of past wages due to employees.

Mr. Hardin further alleges that during his employment, he voluntarily accepted salary reductions that were kept "off the books." He alleges that Defendants promised to repay these salary reductions as well as a large bonus when the company returned to profitability, but did not, even after Mr. Hardin told them that he and the other employees should be repaid. Also, Mr. Hardin alleges that he objected to Belmont's improper reporting to the IRS regarding company vehicles and Defendants' discussion about how to force workers off health insurance, which was becoming more expensive for the company. Based on these incidents, Mr. Hardin has brought eight causes of action before this Court, three of which were completely dismissed and one partially dismissed in an order entered August 3, 2006.

**DISCUSSION**

Defendants seek summary judgment on the remaining causes of action brought by Mr. Hardin against them: 1) fraud, 2) violation of the North Carolina Wage and Hour Act, and 3) wrongful discharge supported by public policy (including possible claims of retaliatory

discharge).  In addition, Defendants seek summary judgment on their counterclaim of conversion of a DVD containing corporate files that Mr. Hardin is alleged to have retained.

**A. Standard of Review**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Once the movant has met the initial burden, the non-moving party must come forward with specific facts demonstrating a genuine issue for trial.  Celotex, 477 U.S. at 323.  A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Pursuant to Rule 56(e), after "a motion for summary judgment is made . . . an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading," rather "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. C. P. 56(e); Anderson, 477 U.S. at 250.  This is particularly important where the nonmoving party bears the burden of proof.  Hughes v. Bedsole, 48 F.3d. 1376, 1381 (4th Cir. 1995).  There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  Anderson, 477 U.S. at 249.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  Id. at 249-50.  The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for

the Plaintiff. Id. at 252. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

When considering summary judgment motions, courts must view the facts in the light most favorable to the party opposing the motion. Austin v. Clark Equip. Co., 48 F.3d 833, 835 (4th Cir. 1995). "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000). Indeed, summary judgment is only proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotations omitted). However, in reviewing the whole record, the Court must remember to "disregard all evidence favorable to the moving party that the jury is not required to believe" and, therefore, only "give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that [the] evidence comes from disinterested witnesses." Reeves, 530 U.S. at 151.

**B. Fraud**

The essence of the Mr. Hardin's fraud claim is that Jeff Rhyne falsely represented that he would repay the voluntary salary reduction to him when Belmont returned to profitability. To prove a claim for fraud in North Carolina, a party must allege and prove five essential elements: (1) false representation or concealment of material fact; (2) that was reasonably calculated to deceive; (3) which was made with the intent to deceive; (4) that did in fact deceive; and (5)

resulted in damage. *Jolly v. Academy Collection Service, Inc.*, 400 F. Supp. 2d 851, 862 (M.D.N.C. 2005). Mr. Hardin cannot prove one or more of these essential elements, thereby entitling Belmont to summary judgment on this claim. *See Briggs v. Mid-State Oil Co.*, 53 N.C. App. 203, 207, 280 S.E.2d 501, 504 (1981).

There is no evidence that Jeff Rhyne misrepresented any material facts with respect to Belmont's need to ask employees to voluntarily reduce their salaries or Belmont's intent to repay the employees. See *Austin v. Tire Treads. Inc.*, 21 N.C. App. 737, 205 S.E.2d 615 (1974) (falsity is evaluated at the time a representation is made or acted upon by the plaintiff); *Childress v. Nordman*. 238 N.C. 708, 78 S.E.2d 757 (1953)(representation must be untrue at the time it was made). At the time of the first voluntary salary reduction meeting in November 2001, Belmont was in a precarious financial situation. It had already implemented several layoffs and the Company was operating with a skeleton staff. Jeff Rhyne and Walter Rhyne had worked without a salary for several months and Belmont wanted to do everything possible to avoid further layoffs of employees.

Jeff Rhyne asked the employees to consider voluntarily foregoing part of their salary. The decision to forgo any salary and, if so, how much, was left entirely to the employees. Jeff Rhyne specifically told employees that their employment would not be affected by their decision, a promise whose truth was vindicated when employees who did not contribute were not discharged nor otherwise adversely affected by their decision not to forgo salary. Indeed, before he left the room, Jeff Rhyne told employees that he did not want to know how much they chose to contribute, if any. Finally, Jeff Rhyne cautioned employees that if they decided to contribute to the voluntary salary reduction that they could "consider the money gone."

A promise generally does not suffice as a basis for fraud unless it was made with the present intent not to perform the promise. *Leake v. Sunbelt Ltd. of Raleigh*, 93 N.C. App. 199, 377 S.E.2d 28, *disc. rev. denied*, 394 N.C. 578, 381 S.E.2d 774 (1989). There is no evidence of such intent not to perform the promise at the time the promise was made. Mr. Hardin knew that repayment was contingent upon Belmont returning to profitability and that accepting the voluntary salary reduction was in his own words "a risky loan." All of the foregoing evidence suggests that Jeff Rhyne did intend to repay the voluntary salary reduction and that he was honest about the possibility that he might not be able to repay it.

Furthermore, Mr. Hardin has offered no evidence of the other elements of the prima facie fraud claim. There has been no evidence that Jeff Rhyne made his statements with knowledge of their falsity or with the intent to deceive. *See Myers & Chapman. Inc. v. Thomas G. Evans. Inc.,* 323 N.C. 559, 374 S.E.2d 385 (1988) (without the element of intent to deceive, the required scienter for fraud is not present); *Watts v. Cumberland County Hosp. Sys.. Inc.*, 317 N.C. 110, 343 S.E.2d 879 (1986) (there can be no recovery for fraud in the absence of evidence of deceptive intent). There has been no evidence that Mr. Hardin was in fact deceived by the promise. The evidence tends to show that he was not deceived because he knew that the salary might never be repaid if Belmont did not return to profitability. The mere fact that this risk was realized does not now render his decision to contribute to the salary reduction the product of deception.

Moreover, the fraud claim is barred by North Carolina's three year statute of limitations on such claims. N.C. Gen. Stat. § 1-52(9). A cause of action for fraud accrues at the time the fraud is discovered or should have been discovered through the exercise of reasonable diligence.

Logan, *North Carolina Torts*, § 25.10[4] (1996). In his position at Belmont as Controller, Mr. Hardin knew when the company returned to profitability. He testified that he knew that Belmont had been profitable for three and a half years before he considered the voluntary salary reduction agreement "broken" and filed this suit.

### C. Violation of the North Carolina Wage and Hour Act

Mr. Hardin seeks recovery of the amounts he contributed to the voluntary salary reduction and of overtime compensation, but this remedy is unavailable to him. As an initial problem, these claims for unpaid wages are subject to a two-year statute of limitations. N.C. Gen. Stat. § 95-25.22(f). The two-year limitations period "begins to run on the date the promise is broken." *Hamilton v. Memorex Telex Cnrp* 108 N.C. App. 1,9,454 S.E.2d 278,282 (1995)(citations omitted). The Plaintiff filed his Verified Complaint on October 25, 2005. However, according to the Plaintiffs deposition testimony, by June 1, 2005, he had been aware that BTMC's promise to repay the voluntary salary reduction amounts had been broken for three and a half years. Accordingly, by virtue of the Plaintiffs own admission, his Wage and Hour claim is barred by the two-year statute of limitations

Mr. Hardin's claim for overtime compensation is also unsupported because he admits that all of the positions he held at Belmont were salaried positions and exempt from the overtime provision of the North Carolina Wage and Hour Act. The overtime provision of the North Carolina Wage and Hour Act is to be construed in accordance with the Fair Labor Standards Act ("FLLSA"). *See Massie v. Bd. of Trustees*, 357 F. Supp. 2d 878 (W.D.N.C. 2005). Under Section 13(a)(1) of the FLSA, employees are exempt from both minimum wage and overtime pay

7

if they qualify for any of the exemptions enumerated in that section of the Act. 29 U.S.C.A. § 213(a)(1). The FLSA regulations contain a special exemption for "highly compensated" employees. *See* 29 C.F.R. § 541.601.

A "highly compensated employee" is deemed exempt under Section 13(a)(1) if: (1) the employee earns total annual compensation of $ 100,000 or more (at least $455 per week on a salary basis); (2) the employee's primary duty includes performing office or non-manual work; and (3) the employee customarily and regularly performs at least one of the exempt duties or responsibilities of an exempt executive, administrative or professional employee. *Id.* Mr. Hardin met all of these requirements from 2003 until his discharge in 2005, which is the only relevant time because of the two year statute of limitation on these overtime claims. Therefore, Belmont's request for summary judgment on these claims must be granted and Mr. Hardin is barred from recovering on them.

### D. Wrongful Discharge Under the Public Policy of the EEPA, Title VII of the Civil Rights Act of 1964, the ADEA, and the ADA

Mr. Hardin does not have any private rights of action under any of these statutes. Title VII does not afford him a right of action because it does not encompass claims for age or disability discrimination, which are the only bases of discrimination he alleges. Finally, Mr. Hardin has no right of action under the ADA because he did not allege disability discrimination on his EEOC charge, despite the fact that he completed an intake questionnaire that explored the prospect of a disability claim. This procedural bar is similar to that detailed below in the analysis of any retaliation claims. Accordingly, Mr. Hardin may only rely on these statutes as basis for

8

his common law claim of wrongful discharge supported by public policy.

Wrongful discharge claims asserting the EEPA statute as the public policy pronouncement are analyzed in accordance with the proof scheme applicable to federal discrimination claims. *Reed v. Buckeye Fire Equipment Co.*, 422 F. Supp. 2d 570, 580 (W.D.N.C. 2006), appeal filed. Docket No. 06-1481 (4th Cir. April 21, 2006); *N.C. Dept. of Correction v. Gibson*, 308 N.C. 131, 137-40, 301 S.E.2d 78, 82-84 (1983) (stating that *McDonnell Douglas* proof scheme applies). In the context of age discrimination, the applicable federal law is the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621. *Reed*, 422 F. Supp. 2d at 580. Claims alleging disability, or handicap, discrimination under the EEPA are analyzed in accordance with the provisions of the North Carolina Persons with Disabilities Protection Act ("NCPDPA"), N.C. Gen. Stat. § 168A-1, *et. seq*.

Mr. Hardin has no direct evidence of age or disability discrimination so he must proceed under the inferential proof scheme set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), *Moore v. City of Charlotte*, 754 F.2d 1100,1104-05 (4th Cir.), *cert. denied*, 472 U.S. 1021,105 S.Ct. 3489, 87 L.Ed.2d 623 (1985); *Smith v. First Union Nat'l Bank* 202 F.3d 234, 248 (4th Cir. 2000); *See Reed*, 422 F. Supp. 2d at 581 (direct evidence is a stated purpose to discriminate).The burden of proof initially lies with the Plaintiff to establish a prima facie case of discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-08,113 S.Ct. 2742, 2746-48, 125 L.Ed.2d 407 (1993). If the Plaintiff can establish a *prima facie* case, the burden then shifts to the defendant to produce a legitimate, non-discriminatory reason for its actions against the Plaintiff. *Id.*; *Texas Dep't. of Community Affairs v. Burdine*. 450 U.S. 248, 253-54, 101 S.Ct. 1089, 1093-94, 67 L.Ed.2d 207 (1981)(this is a burden of production, not persuasion). If the

employer satisfies this burden, the presumption of discrimination "drops out of the picture," and the Plaintiff must establish by a preponderance of the evidence that the defendant's proffered reasons were pretextual and the plaintiff was in fact the victim of intentional discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000).

Mr. Hardin's claims of age and disability discrimination are, by his own admission, supported by nothing more than the his speculation, conjecture, assumptions, unsupported conclusions and other theories that are not probative proof of discrimination and are insufficient to survive summary judgment. *EEOC v. Clay Printing Co.*, 955 F.2d 936, 941 (4th Cir. 1992); *Goldberg v. B. Green & Co.*, 836 F.2d 845 (4th Cir. 1988).

Furthermore, he is unable to establish a *prima facie* case of age discrimination because he cannot satisfy his burden of proving that he was meeting his employer's legitimate expectations at the time of his termination. In analyzing this factor, "it is the perception of the *decisionmaker* which is relevant, not the self-assessment of the plaintiff." *King v. Rumsfeld*. 328 F.3d 145, 149 (4th Cir. 2003)(quoting *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 960-61(4th Cir. 1996)). Accordingly, Mr. Hardin's own opinion of his performance is not probative proof on this element of the *prima facie* case and therefore cannot establish a genuine issue as to whether he was meeting the employer's expectations. *Id.* The burden to prove that age discrimination was the actual reason for his termination remains with the plaintiff at all times. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993).

In considering whether alleged disparate treatment is a pretext for discrimination, the trier of fact is not at liberty to review the soundness or reasonableness of the employer's business

judgment. *Jiminez v. Mary Washington College*, 57 F.3d. 369, 383 (4th Cir.), *cert. denied*, 516 U.S. 944 (1995)("the crucial issue...is an unlawfully discriminatory motive for a defendant's conduct, not the wisdom or folly of its business judgment."). The substantial evidence of Mr. Hardin's extensive work with DentaCAD, which was understood by his Belmont employers to be a side job that would not take up his time at work, and his dishonesty are plausible reasons to discharge an employee. Courts have recognized that this is a legitimate, non-discriminatory reason for discharge. *See Holder v. City of Raleigh*, 867 F.2d 823, 829 (4th Cir. 1989)(employer's belief that employee was not trustworthy was legitimate, nondiscriminatory reason); *Brewer v. Dana Corp.*, 205 F. Supp.2d 511, 518-19 (W.D.N.C. 2002)(violation of work rule is legitimate, nondiscriminatory reason for discharge). It is not the province of the Court "to decide whether the reason was wise, fair, or even correct, ultimately, so long as it was truly the reason for the plaintiff's termination." *Hawkins v. PepsiCo Inc.*, 203 F.3d 274, 278 (4th Cir. 2000)(citing *DeJarnette v. Corning. Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)). Mr. Hardin produced no evidence that would suggest that Belmont's reasons for hiring him were pretextual. Because Mr. Hardin has not met his burden of production on his *prima facie* case of age discrimination, Belmont's motion for summary judgment on this issue is granted.

### E. Possible Retaliation Claims

It is unclear whether Plaintiff intends to assert retaliatory discharge claims as part of his causes of action under the EEPA and Title VII. Any such claims of retaliation would necessarily fail. First, the EEPA's public policy is expressly enumerated and does not include retaliation. The Fourth Circuit has already ruled on this issue in *McLean v. Patten Communities., Inc.*, 332

F.3d 714, (4th Cir. 2003).

> We stated that we agreed with the statement of the district court in *Mullis v. Mechanics & Farmers Bank*, 994 F. Supp. 680 (M.D.N.C. 1997), that absent a clear indication from the North Carolina courts or legislature "it would be inappropriate for a federal court to create a private right of action under [§ 143-422.2]." *Smith*, 202 F.3d at 247. There is no reason to treat retaliation any differently than we have treated sexual harassment, and in this case, we arrive at the same conclusion, and hold that there is no private right of action under North Carolina law for retaliation under § 143-422.2.

*McLean,* 332 F.3d at 719. Accordingly, Plaintiff cannot base a wrongful retaliatory discharge claim on the public policy set forth in EEPA.

Beside the fact that plaintiff does not assert discrimination based on any grounds prohibited by Title VII of the Civil Rights Act of 1964, any Title VII retaliation claim is procedurally barred. "It is axiomatic that a claimant under Title VII must exhaust [his] administrative remedies by raising [his] claim before the EEOC." *Sloop v. Memorial Mission Hosp. Inc.*, 198 F.3d 147, 148 (4th Cir. 1999); Evans v. Technologies Applic. & Svc Co. 80 F.3d 954, 962-63 (4th Cir. 1996). Exhausting administrative remedies requires a plaintiff to file a charge of discrimination with the EEOC and to receive a right to sue letter before filing a claim in federal court. 42 U.S.C. § 2000e-5(b). The allegations in the EEOC charge limit the scope of any subsequent judicial complaint. *Evans*, 80 F.3d at 962-63. The only discrimination claims that may be brought in a Title VII lawsuit are those stated in the initial charge, those reasonably related to the original complain and those developed by reasonable investigation of the original complaint. *Id.* Here, Mr. Hardin did not mark the "Retaliation" box on the EEOC form nor did the narrative portion of the EEOC charge allege retaliation. Therefore, any possible claim of discrimination based on retaliation under Title VII is beyond the scope of this lawsuit.

**IT IS THEREFORE ORDERED** that Defendant Belmont Textile's Motion for Summary Judgment is **GRANTED** as it pertains to all of Plaintiff's remaining claims of fraud, violation of the North Carolina Wage and Hour Act, wrongful discharge supported by the public policy of the EEPA, and violation of Title VII of the Civil Rights Act of 1964 and the ADA.

The Court declines to address the Defendants' conversion claim and instead instructs Plaintiff to return all Belmont property in his possession to Defendants.

**IT IS SO ORDERED.**

Signed: August 20, 2008

Graham C. Mullen
United States District Judge