IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
No. 3:05-CV-492-M

WILLIAM C. HARDIN, JR.,

    Plaintiff,

v.

BELMONT TEXTILE MACHINERY
COMPANY, WALTER RHYNE, individually
and in his official capacity as a corporate officer,
and JEFFREY RHYNE, individually, and in his
official capacity as corporate President,

    Defendants.

**ORDER RE:
MOTION TO STRIKE**

**THIS MATTER** is before the court upon Plaintiff's Motion to Strike Defendants' Memorandum of Law in Support of Motion for Summary Judgment on Remand, Defendants' Motion for Summary Judgment on Remand, and the Second Affidavit of Jeffrey Rhyne. For the following reasons, the motion is **DENIED**.

### I. BACKGROUND

In June 2005, Plaintiff's employment with Belmont was terminated by Walter Rhyne—the Chief Executive Officer of Belmont—and Jeffrey Rhyne—the President of Belmont—because Plaintiff allegedly spent too much time moonlighting for another company during working hours.

In late 2005, Plaintiff sued Belmont, claiming that he was fired because of his age, disability, health, opposition to Belmont's unlawful activities, insistence on proper reporting, and demands for the payment of past wages due to employees. Plaintiff alleged that during his employment he

1

accepted voluntary salary reductions that were kept "off the books." Plaintiff also alleged that Belmont promised to repay these salary reductions, as well as a large bonus, when the company "returned to profitability."

On August 20, 2008, this Court granted Defendants' Motion for Summary Judgment on Plaintiff's claims for fraud, violation of the North Carolina Wage and Hour Act, wrongful discharge based on public policy expressed in the North Carolina Equal Employment Practices Act, Title VII of the Civil Rights Act of 1964, Age Discrimination in Employment Act, and the American with Disabilities Act of 1990. (Order Grant'g Defs.' Mot. Summ. J., Doc. 61.) Of particular relevance to the instant motion, it was held that Plaintiff's North Carolina Wage and Hour Act claim, N.C. Gen. Stat. § 95-25.22(f) (2007), was barred by the two-year statute of limitations. *Id.*

Shortly thereafter, Plaintiff appealed to the United States Court of Appeals for the Fourth Circuit. *Hardin v. Belmont Textile Mach. Co.*, 355 Fed. Appx. 717 (2009).

The Fourth Circuit affirmed in part but reversed this Court's determination that Plaintiff's North Carolina Wage and Hour Act claim was statutorily time barred. *Id.* at 721–23. The court of appeals held that Plaintiff "had no cause of action under N.C. Gen. Stat. § 95-25.7 until Belmont refused to pay him the voluntary salary reductions after he was fired," because the statute of limitations began to run only after Plaintiff was terminated. *Id.*

The court also concluded that Plaintiff's deposition testimony was misinterpreted by this Court. In this vein, the court of appeals observed the following:

> During his December 2006 deposition, Hardin testified that Rhyne had pledged to return the voluntary salary reductions once the firm became profitable. While looking at a financial spreadsheet dated June 1, 2005, Hardin stated that the company had become profitable three and a half years earlier. At another point in the

2

deposition, however, Hardin indicated that the company had reached minimal profitability in March 2004, which corresponded with Rhyne's deposition testimony.

Using the district court's interpretation of Hardin's answer the cause of action would have accrued about December 2001, or, three and a half years prior to June 2005. *Hardin claims his deposition answer meant the company regained profitability three and a half years before the December 2006 deposition, in June 2003, the first quarter of the 2004 fiscal year.*

*Hardin's explanation about his deposition answer is not entirely satisfactory.* But the record is otherwise clear. Several company officials testified that the 2004 fiscal year, which ended on March 31, 2004, was the first time since 2000 that the company had earned a profit. Hardin filed suit on October 25, 2005, within two years after this milestone.

*Id.* at 722–23 (emphasis added).

On remand, this Court was instructed to determine the "correct construction of Belmont's promise and whether it has been broken." *Id.* at 723 n.3. The promise refers to Belmont's voluntary salary reduction plan ("VSR plan"). The VSR plan took effect in November 2001 "with the understanding that the salary deduction amount will be paid back to employees in the form of a bonus *when/if the company returns to profitability*." (Br. Supp. Pl.'s Mot. Summ. J., Doc. 72-1 at 2.) Thus, the two issues on remand are: (1) what is the meaning of "returns to profitability" in the context of the VSR plan, and (2) did Belmont ever return to profitability?

Plaintiff interprets the agreement literally: i.e., that Belmont returned to profitability during the fiscal year ending March 31, 2004, when net income was positive for the first time since Belmont instituted the VSR plan. (Resp. Opp'n Defs.' Mot. Summ. J., Doc. 76 at 7.)

In contrast, Defendants contend that "'showing a profit' and 'return[ing] to profitability' are materially different." (Defs.' Resp. Pl.'s Mot. Strike, Doc. 80 at 9.) Defendants qualify this argument by showing that despite the positive numbers on the income statement in 2004, Belmont's economic

reality was quite bleak; it remained "cash poor" throughout the duration of Plaintiff's employment. (Defs.' Mem. Supp. Mot. Summ. J. Remand, Doc. 74 at 25–26.)

To support its interpretation, Defendants have proffered e-mails allegedly written by Plaintiff (Mem. Ex. A, Doc. 74-1), financial statements (Mem. Ex. B, *id.*), and a second affidavit of Mr. Jeffrey Rhyne ("the Affidavit") (Second Aff. Jeffrey Todd Rhyne, Doc. 74-6). In response, Plaintiff has moved to strike these documents from consideration on summary judgment. (Pl.'s Mot. Strike, Doc. 77.) For the following reasons, Plaintiff's motion to strike is denied.

## II. DISCUSSION

Plaintiff does not specify with particularity the basis for his motion. Nevertheless, it seems that Plaintiff's motion advances four individual theories for striking Defendants' proffered evidence and affidavits. Specifically, it appears Plaintiff contends as follows:

(1) Rule 12(f) of the Federal Rules of Civil Procedure requires the documents to be stricken (Pl.'s Mot. Strike, Doc. 77 at 1);

(2) Defendants' supporting brief—at 28 pages in length—is three pages more than the maximum allowed by Local Rule 7.1(D) (*id.* at 2);

(3) the second affidavit of Jeffrey Rhyne is inadmissible on summary judgment because Defendants have attempted to create a genuine issue of material fact by proffering contradictory testimony (*id.* at 3; Br. Supp. Pl.'s Mot. to Strike, Doc. 77-1 at 4–6); and

(4) Defendants' supporting brief contains various e-mails and financial statements that are unauthenticated in violation of the Fed. R. Evid. 901 (Br. Supp. Pl.'s Mot. Strike, Doc. 77-1 at 3–4).[1]

The Court disposes of these arguments seriatim.

### A. Rule 12(f) – Motion to Strike Pleadings

The first basis for Plaintiff's motion to strike is Rule 12(f) of the Federal Rules of Civil Procedure. (Pl.'s Mot. Strike, Doc. 77 at 1.) Rule 12(f) provides that "[t]he court may strike from a *pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added). Contrary to Plaintiff's view, "Rule 12(f) applies only to pleadings and has no applicability to motions made in pursuit or in opposition to summary judgment." *Pilgrim v. Trs. of Tufts Coll.*, 118 F.3d 864, 868 (1st Cir. 1997), *abrogated on other grounds by Crowley v. L.L. Bean, Inc.*, 303 F.3d 387 (1st Cir. 2002); *see Vehicle Prot. Plus, L.L.C. v. Premier Dealer Servs., Inc.* 650 F. Supp. 2d 800, 807 n.4 (E.D. Tenn. 2009); *see also United States v. Crisp*, 190 F.R.D. 546, 550–51 (E.D. Cal 1999). Therefore, Plaintiff's motion to strike is denied because it seeks to strike a filing other than a pleading.

### B. Striking Filings for Excessive Pages Under Local Rule 7.1(D)

Plaintiff also relies upon Local Rule 7.1(D) as additional support for his motion to strike. Local Rule 7.1(D) provides that "[p]age limits, font sizes, spacing, and other formatting requirements are governed by the Standing Civil Order of the judge to whom the case is assigned. Absent such

---

[1] Plaintiff also appears to have made a fifth argument; contending that Defendants' motion for summary judgment should be stricken and/or dismissed because it is not supported in violation of local rules. This argument is both conclusory and without clarity. As mentioned *infra*, dismissals based on technicalities are highly disfavored by the Federal Rules of Civil Procedure.

requirements in the Standing Civil Order of the judge to whom the case is assigned, the page limit for any brief is 25 pages."[2]

Plaintiff aptly points out that "the supporting brief filed by Defendants contains twenty-eight (28) pages of text, with one page of that total dedicated to a certificate of service." (Br. Supp. Pl.'s Mot. Strike, Doc. 77-1 at 2; *see* Defs' Mem. Supp. Mot. Summ. J. Remand, Doc. 74.) Plaintiff also correctly states that Local Rule 7.1(D) provides that no brief shall be filed with this Court that exceeds twenty-five pages in total length. (Br. Supp. Pl.'s Mot. Strike, Doc. 77-1 at 2).[3]

Plaintiff errs, however, by assuming that the Local Rules apply to this Court the same way that they apply to counsel. Indeed, the Western District's Local Rules provide "mandatory guidance for the appropriate manner to *file* motions and briefs in this Court." (Br. Supp. Pl.'s Mot. Strike, Doc. 77-1 at 2.) The Court creates the Local Rules for its own benefit. It follows that enforcement of the Court's own local rules is discretionary—particularly when the Local Rules conflict with the aims of the Federal Rules set forth in Rule 1 of the Federal Rules of Civil Procedure. *McCargo*, 545 F.2d at 402 (local rules maybe struck down if they are inconsistent with the Federal Rules of Civil Procedure).

---

[2] When analyzing Local Rules, the standard governing Rule 12(f) of the Federal Rules of Civil Procedure—whether the allegations are "redundant, immaterial, impertinent, or scandalous"—is irrelevant. Although the Federal Rules of Civil Procedure do not provide parties with a mechanism to strike filings other than pleadings, the District Court may, in its discretion, promulgate local rules that permit it to strike filings for reasons not inconsistent with the Federal Rules of Civil Procedure. *McCargo v. Hedrick*, 545 F.2d 393, 402 (4th Cir. 1977); Fed. R. Civ. P. 83(a)(1).

[3] Plaintiff also argues that Defendant's appendices should be considered for the purposes of Local Rule 7.1(D). (Doc. 77; *see* Mem. Ex. A, Doc. 74-1).

The Federal Rules of Civil Procedure are construed by the District Court to secure a "just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. The essence of the Federal Rules is that they provide the District Court with the ability to adjudicate matters *on their merits* without resorting to arcane and draconian pleading rules that ultimately deprive an injured party of his or her day in court. *See Conley v. Gibson*, 355 U.S. 41, 48 (1957); *Foman v. Davis*, 371 U.S. 178, 181–82 (1962) (controversies should not be adjudicated on technicalities under the Federal Rules). Plaintiff's hyper-technical motion creates a mountain out of a three-page mole hill. In essence, it seeks to do exactly what the Federal Rules of Civil Procedure prohibit—avoidance of adjudication on the merits through the exploitation of a technicality.

The motion to strike under Local Rule 7.1(D) is accordingly denied.

### C. Striking Affidavits and Exhibits Under Fed. R. Evid. 901 and Fed. R. Civ. P. 56(e)

The next possible basis for Plaintiff's motion to strike is evidentiary. It stems from the requirement in Rule 56(e) of the Federal Rules of Civil Procedure that affidavits considered on summary judgment comply with the rules of evidence. *See* Fed. R. Civ. P. 56(e). In particular, a party cannot create a genuine issue of material fact by submitting a contradictory affidavit or statement as a dilatory tactic. *Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 975 (4th Cir. 1990).

Hardin argues that the Affidavit should be stricken because when Jeff Rhyne states that the Company showed a profit, but did not return to profitability, he attempts to create a sham issue of material fact. To support his argument, Hardin points to the Fourth Circuit's opinion in this matter as a finding of fact that a "return to profitability" had occurred sometime around 2004. (Resp. Opp'n Defs.' Mot. Summ. J., Doc. 76 at 7.)

Plaintiff, however, errs by taking the Fourth Circuit's holding out of context. There is no dispute that "the 2004 fiscal year, which ended on March 31, 2004, was the first time since 2000 that the company had earned a profit." *Hardin v. Belmont Textile Mach. Co.*, 355 Fed. Appx. 717, 723 (4th Cir. 2009). There is, however, a live dispute as to whether the 2004 profit represented a return to profitability. If the Fourth Circuit had found that the 2004 profit constituted a "return to profitability," then there would be no reason to remand: profit and a "return to profitability" would be one and the same. But, as the Fourth Circuit explained, "[t]he correct construction of Belmont's promise and whether it has been broken are issues for determination after remand." *Id.* n.3.

This does not mean, however, that Defendants are free to oppose Plaintiff's motion for summary judgment with affidavits that distort settled facts. For example, if Mr. Rhyne asserted that Belmont did not produce a profit in 2004, then the testimony should surely be stricken for it would present a sham issue of material fact that has already been resolved and admitted by both parties. *See Rohrbough*, 916 F.2d at 975. But in this case, the Affidavit merely explains "why the showing of a small profit in 2004 was not a return to profitability," not that Belmont did not produce a profit at all. (Defs'. Resp. Pl's. Mot. to Strike, Doc. 80 at 9.) It is paradoxical to suggest that Mr. Rhyne's affidavit creates a genuine issue of material *fact* when his testimony in that affidavit concedes that the company had turned a profit in 2004. (Second Aff. of Jeffrey Todd Rhyne Doc. 74-6 at 5–6.)

Moreover, the construction of this agreement is a question of law, not fact. *See Seabulk Offshore, Ltd. v. Am. Home Assur. Co.*, 377 F.3d 408, 418 (4th Cir. 2004). To the extent that Mr. Rhyne's testimony creates a "genuine issue" of any kind, it could only be with respect to the proper interpretation of the phrase "return to profitability"—a question of law. Therefore, Mr. Rhyne's

testimony does not create a genuine issue of *material fact*. For that reason, his testimony alone could not preclude summary judgment.

Accordingly, Defendants' motion to strike the Affidavit is denied.

**D.      Memoranda Exhibits A and B are Sufficiently Authenticated**

Plaintiff also contends that Memoranda Exhibits A and B are not sufficiently authenticated and moves to strike them on that basis. (Pl.'s Mot. Strike, Doc. 77.) Memorandum Exhibit A contains e-mails allegedly authored by Plaintiff, and Memorandum Exhibit B contains financial statements prepared for Belmont during the ordinary course of business. (Mem. Ex. A, Doc. 74-1; Mem. Ex. B, *id.*)

It appears that the basis for Plaintiff's motion to strike is Fed. R. Evid. 901. In the Fourth Circuit, "[i]t is well settled that unsworn, unauthenticated documents cannot be considered on motions for summary judgment." *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993). The general rule is that the authentication requirement is "satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a).

*1.      Motion to Strike Memorandum Exhibit A: Hardin's E-Mails*

Plaintiff first argues that Hardin's e-mails were never authenticated and must therefore be stricken.[4] Under Rule 901(a), "all that is required is 'evidence sufficient to support a finding that the

---

[4] There is some support for Hardin's position. *See* CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, 10A FEDERAL PRACTICE & PROCEDURE § 2722 (3d ed. 2010) ("[A] letter submitted for consideration under Rule 56(e) must be attached to an affidavit and authenticated by its author in the affidavit or a deposition."). However, this Court interprets Hardin's authorities in the context of the general rule: all that is required is "evidence sufficient to support a finding that the matter in question is what its proponent claims." *Simpson*, 152 F.3d at 1249 (quoting Fed. R. Evid. 901(a)).

matter in question is what its proponent claims.'"*United States v. Simpson*, 152 F.3d 1241, 1249 (10th Cir. 1998).

In *United States v. Safavian*, 435 F.Supp.2d 36 (D.D.C. 2006), the district court authenticated the e-mails in question under Rule 901(b)(4) by examining their "'distinctive characteristics and the like,' including '[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.'" *Id.* at 40. The court observed that the e-mails had "many distinctive characteristics, including . . . the name of the person connected to the address." *Id.* The court also noted that "[t]he contents of the e-mails also authenticate them as being from the purported sender and to the purported recipient." *Id.*

Like in *Safavian*, the distinctive characteristics of Hardin's emails allow for their authentication. The e-mails in this case are provided on a printout that is in the familiar Microsoft Outlook format (*see* Mem. Ex. A, Doc. 74-1 at 2–4.), and they provide "many distinctive characteristics, including . . . the name of the person connected to the address."[5] *Safavian*, 435 F.Supp.2d at 40. The e-mails also discuss "various identifiable matters" related to Hardin's employment—namely the VSR plan—which sufficiently authenticate the e-mails as being "what its proponent claims." *See id.* Therefore, the motion to strike Memorandum Exhibit A is denied.

2. *Motion to Strike Memorandum Exhibit B: The Financial Statements*

Plaintiff also moves to strike Memorandum Exhibit B—the financial statements—for lack of authentication. Again, the general rule is that the authentication requirement is "satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed.

---

[5] The e-mails are signed at the bottom as "Bill" and appear in the "From" row as "Hardin, Bill". (Mem. Ex. A, Doc. 74-1 at 2–4.)

R. Evid. 901(a). For example, even unauthenticated affidavits proffered by a plaintiff's corporate counsel could be authenticated by a "competent witness with personal knowledge." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542 (9th Cir. 1990).[6]

In this case, Defendant has provided sufficient affidavits to the Court—particularly those from Mr. Rhyne, Belmont's President—for the Court to conclude that a "competent witness with personal knowledge" has certified the documents as authentic. (Second Aff. Jeffrey Todd Rhyne, Doc. 74-6.) Not once does Plaintiff contend that the financial statements are fabricated or unauthentic; nor would the record support such an assertion. Accordingly, the Court defers to Mr. Rhyne's "personal knowledge" of the financial documents to certify the documents as authentic. Because Mr. Rhyne's affidavit provides "evidence sufficient to support a finding that the matter in question is what its proponent claims," Plaintiff's motion to strike Memorandum Exhibit B is denied.

### III. CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff's Motion to Strike Defendants' Memorandum of Law in Support of Motion for Summary Judgment on Remand, Defendants' Motion for Summary Judgment on Remand, and the Second Affidavit of Jeffrey Rhyne is hereby DENIED.

Signed: June 7, 2010

Graham C. Mullen
United States District Judge

---

[6] The Fourth Circuit relied on *Hal Roach Studios* in *Orsi. Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993).